FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA    OCT 15 FM 2:57
SOUTHERN DIVISION

ENTERED
OCT 1 5 2003

DEMPSEY TRUETT MADDOX,                )
                                      )
                Plaintiff             )
                                      )
vs.                                   )   CASE NO. CV02-HGD-0118-S
                                      )
CONSOLIDATED BISCUIT CO., INC.,       )
                                      )
                Defendant             )

### MEMORANDUM OPINION

The above-entitled civil action is before the undersigned magistrate judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Plaintiff, Dempsey Truett Maddox, claims that defendant, Consolidated Biscuit Co., Inc. (Consolidated), has violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq*. Defendant has filed a motion for summary judgment [Doc. #15]. The parties have submitted briefs and exhibits, and the motion is ready for disposition.

#### STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475

2

U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2514, citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiff can meet his burden of coming forward with sufficient evidence as to each material element of his claim sufficient to permit a reasonable jury to find in his favor.

### FACTUAL BACKGROUND

Consolidated is in the business of manufacturing cookies. [Defendant's Exh. A, Plaintiff's Depo., at 135]. Plaintiff, who was discharged from employment in 2001 by defendant when plaintiff was 66 years old, had been an employee of Consolidated or one of its predecessor companies in its Birmingham, Alabama, facility since 1979. He was in charge of purchasing, warehouse and traffic. [*Id.* at 53-54]. Traffic responsibilities later were turned over to Terry Williamson, warehouse manager. [*Id.* at 94-95].

In 1998, Keebler purchased the facility where plaintiff worked. Kent Feagans was the Director/Plant Manager over the Birmingham facility at that time and continued in that capacity after the purchase was complete. In 2000, Consolidated purchased the plant. In January or February 2000, plaintiff met with Consolidated's Vice President of Operations, Larry Ivan. Ivan told Maddox that everything would remain status quo after the purchase. Plaintiff asserts that, after the purchase by Consolidated, Feagans was his direct supervisor. [Plaintiff's Exh. 8, Aff. of Kent Feagans, at ¶ 2]. Feagans served as Director of Operations until the end of June 2000. He was replaced by David Krolikowski. [*Id.* at ¶ 5]. Plaintiff asserts that, when Feagans' employment ended, he did not tell plaintiff to report to anyone else; therefore, plaintiff continued to report to Feagans' replacement. [*Id.* at ¶ 6]. Defendant asserts that, after the purchase by Consolidated, Larry Ivan told plaintiff that he would be reporting to him. [Defendant's Exh. A, Plaintiff's Depo., at 13-14, 100-01, 103-05].

As Consolidated's purchasing manager, plaintiff purchased the flour, sugar, shortening, and other raw materials used in the manufacturing, packaging and labeling processes. [*Id.* at 100, 103]. It was his duty to see that all the elements necessary for production were on the premises. [*Id.* at 96, 117]. It was not unusual for plaintiff to work after hours or on weekends. [*Id.* at 296; Plaintiff's Exh. 8, Aff. of Kent Feagans, at ¶ 8]. Prior to the termination of his employment, plaintiff approached Feagans and requested

that he be allowed to reduce the number of hours he worked at the plant and that he be allowed to work from home on occasion. [Plaintiff's Exh. 8, Aff. of Kent Feagans, at ¶ 12].

Feagans told plaintiff that he would relay plaintiff's request to Larry Ivan. [*Id.*]. Feagans did so and further advised Ivan that Maddox wanted to have his laptop computer set up so that he would have remote access into the company's computer system when working from home. [*Id.* at ¶¶ 12, 13]. Larry Ivan never gave plaintiff permission to work from home, and there is no evidence that Ivan was aware that Maddox was working from his home until shortly before plaintiff's discharge. [Defendant's Exh. A, Plaintiff's Depo., at 221]. However, sometime after plaintiff made his request to Feagans, Maddox sent his computer to defendant's headquarters and it was set up so that plaintiff would have remote access to defendant's system. [*Id.* at 226].

In September 2001, well after Feagans had been replaced by Krolikowski, Ivan discovered that plaintiff was working out of his home. Krolikowski believed that plaintiff had Ivan's permission to work from home. [Krolikowski Aff. at ¶ 4]. Maddox never asked for Krolikowski's permission to continue working out of his home. [Defendant's Exh. A, Plaintiff's Depo., at 222]. Ivan confronted plaintiff about this on October 11, 2001, and Maddox admitted working out of his home on a regular basis. [Krolikowski Aff. at ¶ 31].

5

Plaintiff asserts that he began to work at home one or two days a week for approximately eight months prior to his discharge. [Defendant's Exh. A, Plaintiff's Depo., at 182, 184, 315]. Plaintiff would take his laptop computer with him and always would let his supervisor know how to contact him. [*Id.* at 326-30; Plaintiff's Exh. 8, Aff. of Kent Feagans, at ¶ 9]. There is no evidence that plaintiff's early departures from work had a negative effect on the plant's operations. [Plaintiff's Exh. 8, Aff. of Kent Feagans, at ¶ 10]. While working at home on Tuesdays and occasional Wednesdays, plaintiff worked 12 to 20 hours a day. [Defendant's Exh. A, Plaintiff's Depo., at 208].

During the October 11, 2001, meeting between Ivan and Maddox, Ivan asked plaintiff about his plans for retirement. [*Id.* at 263-64]. Plaintiff testified that, twice in his last six months with Consolidated, he inquired about his retirement– once to Wendy Grill, the Birmingham facility Human Resources Manager, and once to Jack Johnson at Consolidated's headquarters. [*Id.* at 230-33]. Ivan testified that he asked plaintiff about these inquiries at that time because he was considering it as a possible alternative to discharging plaintiff. [Defendant's Exh. B, Ivan Depo., at 33].

At that time, Ivan also told Maddox that, as far as he was concerned, plaintiff working out of his home was like stealing from the company. [Defendant's Exh. A, Plaintiff's Depo., at 264]. Plaintiff apologized and told Ivan that he would be in the office five days a week. He also offered to write a check

6

for anything Ivan believed he had stolen. [*Id.* at 264-65]. Ivan discharged plaintiff a week later, though he admits that plaintiff had presented no performance problems up to that point in time. [Plaintiff's Exh. B, Ivan Depo., at 33].

Consolidated did not replace plaintiff as purchasing manager *per se*. Warehouse manager Terry Williams, age 55, assumed the day-to-day ordering of items for the Birmingham facility. Three other employees took over the negotiation of contracts for the major raw products. [*Id.* at 88-89, 91].

### DISCUSSION

Federal law makes it unlawful to discriminate against a person regarding the terms and conditions of employment based solely on age. See 29 U.S.C. § 623. In proving an age discrimination claim, a plaintiff can establish a *prima facie* case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for circumstantial evidence. *See Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). A review by the court of all the evidence in this case leads it to conclude that there is no direct evidence of discrimination and that, therefore,

plaintiff must make out a *prima facie* case of discrimination based on circumstantial evidence.

This circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas, supra,* for cases arising under the ADEA. *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir. 1992). In order to make out a *prima facie* case of an ADEA violation, the plaintiff must show that he was (1) a member of the protected age group, (2) subject to adverse employment action, (3) qualified to do the job, and (4) replaced by a younger individual.

If the plaintiff satisfies this burden, the employer then must offer a legitimate, non-discriminatory reason for the employment action. *See Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 851 (11th Cir. 1997). If the employer does so, the plaintiff bears the ultimate burden of demonstrating that the employer's proffered reasons are a pretext for discrimination. *See id.; Watkins v. Sverdrup Technology, Inc.,* 153 F.3d 1308, 1314 (11th Cir. 1998); *Mitchell v. USBI Co.,* 186 F.3d 1352, 1354 (11th Cir. 1999).

Defendant asserts that plaintiff has failed to make out a *prima facie* case of discrimination under the *McDonnell* test because he failed to show that he was replaced. However, the Supreme Court has stressed that the *McDonnell Douglas* test is not intended to be a rigid or ritualistic test of disparate treatment. *See, e.g., United States Postal Service Bd. of Governors v. Aikens,*

460 U.S. 711, 715, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1982). In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. *See Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991) (citing *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983)). The Eleventh Circuit generally has rejected an overly strict formulation of the elements of a *prima facie* case, particularly in age discrimination cases. *See id.* At the summary judgment stage, the inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Id.*; *Carter*, 870 F.2d at 583.

The fact that plaintiff cannot identify a single individual who replaced him in all his various duties does not prevent plaintiff from establishing a *prima facie* case. *Carlson v. WPLG/TV-10, Post-Newsweek Stations of Florida*, 956 F.Supp. 994, 1001 (S.D.Fla. 1996). The Eleventh Circuit has "declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a *prima facie* case." *Carter*, 870 F.2d at 583. *See also Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550 (11th Cir. 1988); *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Pace v. Southern Railway System*, 701 F.2d 1383 (11th Cir.), *cert. denied*, 464 U.S.

1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th Cir. 1980).[1]

While plaintiff's duties were, in fact, farmed out to other employees, each of those employees is younger than plaintiff. The oldest of these replacements is Terry Williamson, who was 55 years old when plaintiff was discharged. He is eleven years younger than plaintiff. The defendant's position

> fails to take into account this Court's repeated eschewal of an overly strict formulation of the elements of a *prima facie* case, especially in age discrimination cases. Age, unlike race or sex, "is not a discreet and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often subtle and relative ones." *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1442 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). As we recognized in *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980): "Seldom will a sixty-year-old be replaced by a person in the twenties. . . . [B]ecause the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account." Thus, we have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a *prima facie* case. *See, e.g., Castle*, 837 F.2d 1550 (11th Cir. 1988); *Goldstein*, 758 F.2d 1435 (11th Cir. 1985); *Pace v. Southern Ry. Sys.*, 701 F.2d 1383 (11th Cir.),

---

[1] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

> cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); McCorstin, 621 F.2d 749 (5th Cir. 1980).[2] To the contrary, the establishment of a *prima facie* case is essentially a factual question particular to the circumstances of a given case. Goldstein, 758 F.2d at 1443.

Carter, 870 F.2d at 583. In Carter, the plaintiff, age 49, was replaced by a 46-year-old. Id. at 579. This was held to be a sufficient age gap to constitute a *prima facie* case. Id. at 583. Given the similarity of these cases, the undersigned magistrate judge concludes that plaintiff has established a *prima facie* case of age discrimination.[3]

---

[2] The need for increased flexibility in applying the *prima facie* criteria to age discrimination cases has been widely acknowledged in the courts. Some circuits have stated explicitly that a plaintiff need only establish that he was replaced by a younger person. See, e.g., Carden v. Westinghouse Electric Corp., 850 F.2d 996, 1000 (3d Cir. 1988) (plaintiff must show replacement by younger person); Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1542 (10th Cir. 1987) (plaintiff must show passed over for promotion in favor of younger person); Diaz v. American Telephone & Telegraph, 752 F.2d 1356, 1359-60 (9th Cir. 1975) (plaintiff need not be replaced by someone outside protected class); Douglas v. Anderson, 656 F.2d 528, 533 (9th Cir. 1981) (third prong of test can be established by showing that plaintiff was replaced by substantially younger person); Schwager v. Sun Oil Co., 591 F.2d 58 (10th Cir. 1979) (plaintiff must show position filled by person younger than himself).

[3] Despite this holding, the undersigned does not find any evidence of age discrimination associated with plaintiff being asked about his plans for retirement. Courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination. See, e.g., Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 610-11 (11th Cir. 1987) (remark by personnel manager to terminated security guard that in order to transfer "you would have to take another physical examination and at your age, I don't believe you could pass it" did not constitute direct evidence of discrimination); Lindsey v. American Cast Iron Pipe Co., 772 F.2d 799, 801 (11th Cir. 1985) (supervisor's statement that plaintiff would not be considered for upcoming position because company would be looking for younger person than plaintiff constituted direct evidence of discrimination based on age); Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. Unit B 1981) (scrap of paper on which was written "Lay-off Too Old" constituted direct evidence); Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir. 1980) (remark that board wanted younger man did not indicate that plaintiff was terminated because of his age). The fact that plaintiff was asked about his retirement plans does not reflect a blatant intent to discriminate.

Once a plaintiff meets his burden of establishing a *prima facie* case, an inference of discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its hiring decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). It is not the role of federal courts to second-guess the hiring decisions of business entities. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). The reason offered by an employer for an action "'does not have to be a reason that the judge or jurors would act on or approve.'" *Id.* (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979)). Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature. *Id.*

Once a defendant articulates a legitimate, non-discriminatory reason for its action, the initial inference of discrimination "drops" from the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The burden then shifts back to the plaintiff to show that the proffered reason was pretext for intentional discrimination and that the defendant intentionally discriminated against him. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. A plaintiff may show pretext and survive summary judgment by "presenting evidence sufficient to demonstrate a genuine issue of

material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997) (citations omitted); *see Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749 ("The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a *prima facie* case, suffice to show intentional discrimination."); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999).

Defendant asserts that it can establish a legitimate, non-discriminatory reason for discharging plaintiff. In response, plaintiff asserts that he can show that this reason is pretextual.

Defendant alleges that plaintiff's supervisor's supervisor, Larry Ivan, discovered that plaintiff had not been reporting to the Birmingham facility to work but, without his permission, was working at home one or two days a week. Furthermore, Ivan believed that plaintiff had deceived the Birmingham facility plant manager by leading him to believe that Ivan had approved this arrangement and the facility manager, David Krolikowski, testified that he believed that plaintiff had permission from Ivan to work in this manner. [Krolikowski Aff. at ¶ 14]. According to defendant, plaintiff's absence from the plant was a serious violation because he could not perform the tasks required by his position if he was not present at the plant. [Doc. #20, Defendant's Brief in Support of Motion for Summary Judgment, at 15].

13

The only person with whom plaintiff discussed working from home was his then-supervisor, Kent Feagans.[4]  Plaintiff requested that Feagans allow him to work at home a couple of days a week using his laptop.  Feagans told plaintiff that he would relay his request to Larry Ivan, which Feagans testified he did.  Plaintiff admitted that he had not obtained the permission of Larry Ivan or Feagans' June 2000 successor, David Krolikowski, to work at home.  [Defendant's Exh. A, Plaintiff's Depo., at 221-22].  Although plaintiff never received a direct reply from Ivan, subsequently, sometime in 2000, plaintiff sent his laptop computer to defendant's headquarters and defendant set up the laptop so that plaintiff could have remote access to defendant's system.  Plaintiff then began working from his home one or two days a week.

The evidence, viewed in the light most favorable to plaintiff, reflects that sometime in 2000, Maddox requested of Feagans that he be allowed to work from home one or two days a week and to have his laptop set up to allow him remote access to the Consolidated computer system.  Feagans relayed this request to Ivan, who never responded.  Nevertheless, plaintiff sent his computer to company headquarters and there it was set up to allow him remote access.

---

[4] There is a dispute concerning whether Feagans or Larry Ivan was plaintiff's supervisor. There is evidence to support either conclusion.  Since the evidence is considered in the light most favorable to plaintiff, it is assumed for summary judgment purposes that Feagans was plaintiff's immediate supervisor.  However, that does not mean that Feagans necessarily had the power to authorize plaintiff to work at home.

Ivan claims that he was unaware that plaintiff was working from home. While there is evidence that Ivan received a request that Maddox be allowed to work from home, there is no evidence that he gave Maddox permission to do so or that he was aware that Maddox had begun to do this.

Maddox, on the other hand, had used his laptop to do work after hours or while on vacation when the facility was owned by Keebler, and this was known by his then-supervisor, Kent Feagans. While Maddox's request to work from home was never directly allowed or denied, he sent his computer to defendant who set it up for remote access. Based on these circumstances, it would not have been unreasonable for plaintiff to have assumed that he had the company's permission to work from home. Likewise, if he made this assumption, he would not have intentionally misled Krolikowski by telling him that he had permission to work from home. Under these circumstances, Maddox may have been mistaken; but he did not intentionally mislead anyone.

However, regardless of whoever else may have known about plaintiff's work-from-home arrangement, there is no evidence that Ivan ever gave him permission to do so and no evidence that Ivan was aware that the company had set up plaintiff's computer for remote access. Since Ivan was the one who terminated plaintiff, it is necessary that his actions in this regard be tainted by evidence of intent to discriminate based on age.

The evidence, viewed in plaintiff's favor, reflects that there was a massive misunderstanding regarding plaintiff's permission to carry on his work-at-home arrangement. It is undisputed that Ivan never gave plaintiff permission to do so and was unaware he was doing so. Further, when Ivan found out plaintiff was working from home without company permission, he concluded, perhaps erroneously, that Maddox had *intentionally* misled his newest supervisor, Krolikowski, to believe that Ivan had, in fact, granted him the needed permission to do this. Thus, while the evidence, viewed in the light most favorable to plaintiff, strongly reflects that Ivan discharged Maddox based, in part, on this possibly erroneous factual assumption, it does not reflect that this action was taken by him based on an age-related animus.

Ivan testified that part of his reason for discharging plaintiff was because he believed that plaintiff had misled Krolikowski and he felt he could no longer trust him to occupy a position of trust within the company. Although plaintiff had been, up to this point, a good employee, and his termination, as opposed to less-drastic disciplinary measures, may seem harsh, an employer may make a decision regarding an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix*, 738 F.2d at 1187.

Because plaintiff has failed to create a genuine issue of material fact as to the truth of falsity of defendant's asserted reason for terminating plaintiff,

plaintiff has failed to rebut defendant's proffered non-discriminatory reason for his termination. Therefore, defendant's motion for summary judgment is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 15th day of October, 2003.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE